Harry Wartnik v. Commissioner. Frances Wartnik v. Commissioner.
Wartnik v. Commissioner
Docket Nos. 3416, 3417.
United States Tax Court
1946 Tax Ct. Memo LEXIS 34; 5 T.C.M. (CCH) 974; T.C.M. (RIA) 46269; November 15, 1946
*34 George T. Altman, Esq., 215 W. 7th St., Los Angeles 14, Calif., for the petitioners. Byron M. Coon, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined deficiencies in the income tax of the petitioners as follows: Docket No.
Year
Amount
Harry Wartnik
3416
1940
$741.06
1941
254.18
Frances Wartnik
3417
1940
741.06
1941
254.19
The matters in controversy are the correctness of the respondent's action (1) in determining that for 1940 Harry Wartnik's distributive share of the income of I. G. Wartnik Partnership was $19,339.52 and his distributive share of the income of Howard Clothing Company, another partnership, was $15,744.71, (2) in disallowing a deduction for 1940 of $2,976.25 and a deduction for 1941 of $3,209.75 claimed for traveling, entertainment and automobile expenses incurred by Harry Wartnik, and (3) in disallowing a portion of a deduction of $630.19 taken in 1941 as depreciation on automobiles. Issue I. - Partnership Income Findings of Fact The petitioners are husband and wife and for all periods herein material resided in California. Their *35 returns for 1940 and 1941 were filed on the community property basis, with the Collector at Los Angeles. Harry Wartnik, sometimes hereinafter referred to as the petitioner, Frances Wartnik being involved because her returns were filed on the community property basis, was employed by his brother, I. G. Wartnik, prior to 1937. I. G. Wartnik was engaged in the business of purchasing, selling or otherwise liquidating stocks in trade of various types of merchandise, accounts and notes receivable and other types of property, all generally known as "distress stocks". His warehouse and principal place of business was in Los Angeles and he maintained permanent retail stores in San Diego and in Santa Barbara. In some instances he conducted selling or liquidating operations in the business locations of his predecessors in title. In other instances the purchased assets were transferred to his warehouse. On January 4, 1937, the petitioner and I. G. Wartnik entered into a partnership agreement for the conduct, under the firm name of I. G. Wartnik, of the abovedescribed business. I. G. Wartnik was to furnish all the capital and petitioner was to furnish only his services. The parties were to *36 share equally in the profits and losses of the business. The partnership was terminable upon the request of either partner. The agreement provided in part as follows: 6. The partnership shall rise and commence as to each venture upon the acquisition of the assets in whatever name or by whatever means. It is understood and agreed that the assets may be acquired by either partner in his individual name or by both in their joint names or by either or both in such trade names as either or both may have adopted and that the interest acquired may be less than the whole and may be represented by a joint or a joint and several interest with others, either in the stock of a corporation or in a joint venture or partnership. 7. The partnership shall cease and determine as to each acquisition of assets as and when all of the assets acquired shall have been liquidated and reduced to cash or as and when any such assets not so liquidated and reduced to cash shall have been delivered to the warehouse of I.G. hereinabove referred to or to other permanent places of business of I.G. * * *
9. The partnership accounts as to each venture shall not be closed and the result thereof as to profit *37 and loss ascertained, until in each instance all of the assets acquired therein shall have been liquidated and reduced to cash. However, as such liquidation and reduction to cash may involve co-mingling of the property with other property of the same class in the warehouse or in one or the other of the permanent places of business of I.G. and may consist of choses in action, the liquidation of which may be long deferred and may involve many changes in the nature and character of the assets, it may in many instances be practically impossible to follow the assets through to the eventual liquidation thereof. Accordingly, it is understood and agreed that I.G. shall be the sole owner of all the assets of the partnership at all times from and after the delivery thereof to the warehouse or to a permanent place of business of I.G. and that the partnership as such, shall have no right, title, interest nor estate therein, save and except that the partnership shall have the right to an accounting from I.G. for the liquidation value thereof. I.G. may at any time after such delivery fix and establish the liquidation value which thereupon shall be and become the purchase price of the same, payable *38 by I.G. to the partnership and shall be so taken and considered in any and all partnership accountings. * * *
11. I.G. shall have the right to co-mingle the partnership funds with his own and otherwise generally to act and deal with the partnership property as his own. It being understood and agreed that any payments of monies paid by I.G. to Harry shall be taken and considered as advances on account of the participation of Harry in partnership profits either theretofore or thereafter to accrue. I.G. shall upon the demand of Harry therefor, account to and pay over to Harry any then remaining one half of the balance of the profits of the partnership in I.G.'s hands and Harry shall likewise upon the demand of I.G. pay over to I.G. any then remaining one half of the balance of the partnership profits in Harry's hands. Each party shall upon the demand of the other pay to the other one half of the partnership losses at any time that such losses shall have been ascertained. The partnership accountings between the partners need not be made except upon demand and neither partner shall be chargeable with interest upon any balances owing from him. All the partnership assets, including *39 its bank accounts, were carried in the name of I. G. Wartnik as an individual. Throughout the years 1937 through 1939, the partnership profits were divided equally between the petitioner and I. G. Wartnik, as provided for in the partnership agreement. About the middle of 1940, the petitioner and I. G. Wartnik had a controversy about an undisclosed matter. Shortly thereafter the petitioner informed I. G. Wartnik of his desire to wind up the partnership affairs and terminate it. The petitioner expressed a willingness to continue his services to the partnership for a short time to wind up its affairs and indicated that he would expect no part of the profits for doing so. Although the partnership operations continued until the end, or near the end, of 1940, with the petitioner continuing to render service to the business until sometime in November or later in 1940, there is nothing to indicate that the parties agreed to modify the partnership agreement so that petitioner should not share in the partnership profits during the period in which its affairs were being wound up. At the time the petitioner ceased to render service to the partnership its assets were worth their cost. About *40 1935 or 1936, while I. G. Wartnik was conducting the "distress stock" business as a sole proprietorship, D. Podlasky, who was conducting business under the name of Howard Clothing Company in Los Angeles, was having difficulties with his creditors. I. G. Wartnik took over Podlasky's business and operated it for a time, for a stated amount. Thereafter, a partnership, consisting of I. G. Wartnik, the petitioner and Podlasky, was formed to carry on the business under the name of Howard Clothing Company. After a short time and about October 1, 1936, I. G. Wartnik withdrew from the firm. The petitioner and Podlasky continued to operate as a partnership under the same firm name, sharing profits and losses on an approximately equal basis. Two accounts were maintained on the books of the I. G. Wartnik partnership with respect to the petitioner, designated Advanced Harry Wartnik on Howard's and Capital a/c Harry Wartnik. The petitioner's withdrawals from Howard Clothing Company were debited to the account designated Advanced Harry Wartnik on Howard's, and his distributive share of the profits of that partnership were credited to the account. The petitioner's withdrawals from the I. G. Wartnik *41 partnership were debited to the account designated Capital a/c Harry Wartnik, and his distributive share of the profits from that partnership were credited to the account. At the close of 1939 the credit balance in the account Advanced Harry Wartnik on Howard's was $13,898.49, and the credit balance in the account Capital a/c Harry Wartnik was $13,596.17. During 1940, debits totaling $10,000 for withdrawals were made to the account Advanced to Harry Wartnik on Howard's, leaving a credit balance of $3,898.49 in the account at the end of 1940. During 1940, debits totaling $8,360.92 were made to the account Capital a/c Harry Wartnik, leaving a credit balance of $5,235.25 in the account at the end of 1940. Neither of the foregoing accounts show any credits made therein during 1940. The books of the I. G. Wartnik partnership were not closed immediately following the end of 1940, and its income return was not filed by the due date. Neither was the partnership return of Howard Clothing Company for 1940 filed by the due date. On March 15, 1941, tentative returns for 1940 for Harry Wartnik and Frances Wartnik showing no estimated tax liability, and executed by Frances Wartnik, were filed. *42 On application, they were granted an extension to April 15, 1941, and later to May 31, 1941, for filing completed returns. On February 19, 1941, I. G. Wartnik gave petitioner a check for $9,000, which bore the notation "Payment in full of all partnership agreements". The check was paid on February 21, 1941. On May 28, 1941, the petitioner and I. G. Wartnik executed an instrument styled "Agreement and Release", which reads in part as follows: THAT heretofore the parties hereto have operated certain business enterprises and ventures as partners under a partnership agreement heretofore executed by the parties hereto, said agreement being dated the 4th day of January, 1937, and THAT some time subsequent thereto, certain differences arose between the parties, and each party made certain claims in connection with the manner of accounting the profits of the ventures and business and the allocation of income to each of the parties hereto, and, pursuant to said claims and discussions, the allocation of income between the parties hereto was reflected in accordance therewith, and THAT during the course of the operations of the ventures and business of the parties hereto under said partnership *43 agreement, the parties hereto have not had a final nor formal accounting between themselves, and now for the purposes of liquidating and determining the claims one against the other of the parties, and for the purpose of terminating the partnership, NOW, THEREFORE, in consideration of the mutual promises and releases herein contained, and in consideration of the payment of the sum of Nine Thousand Dollars ($9,000.00), on February 19, 1941, by I.G. to Harry, and for other good and valuable considerations, it is hereby agreed, 1. THAT the parties have heretofore terminated the said partnership as of December 31, 1940, and 2. THAT all the accounting between the parties hereto shall be strictly in accord and upon the basis of that partnership agreement between the parties heretofore agreed upon, being that agreement dated January 4, 1937, 3. THAT both parties agree that they are familiar with all the books and records of the partnership ventures and business and both parties specifically agree to the within statement and settlement of accounts between them, and agree that by payment of the sum of Nine Thousand Dollars, ($9,000.00), by I.G. to Harry, heretofore made on February 19, 1941, the *44 same shall constitute payment of Five Hundred Thirty-three Dollars and 11/100 ($533.11), found due to Harry under the accounting as of December 31, 1940, and payment of Eight Thousand Four Hundred and Sixty-six Dollars and 89/100, ($8,466.89), as additional consideration for the settlement and liquidation of all claims between the parties hereto, each against the other, of any nature whatsoever, arising in any manner out of the partnership ventures or business, and 4. THAT each of the parties hereto does release and, discharge the other from any and all claims, demands, promises, or obligations, whatsoever, and each for himself does waive the provisions of Section 1542 of the Civil Code of the State of California. The partnership returns of Howard Clothing Company for the years 1936 through 1939 were signed by petitioner and, in the schedules of distributive shares of partners, showed the partners to be Podlasky and petitioner, with no indication that petitioner held his share as nominee or otherwise for another. The distributive shares shown for petitioner were reported as such in his and his wife's income tax returns, and so far as disclosed, were not included in the I. G. Wartnik *45 partnership returns. On May 29, 1941, the petitioner executed a 1940 partnership return for Howard Clothing Company, showing a net income of $30,502.10 and that such amount was distributable $14,757.39 to Podlasky and $15,744.71 to himself, with the following notation after his name: "This amount reported in partnership return of I. G. Wartnik; According to partnership agreement of I. G. Wartnik, Harry Wartnik owned an interest in Howard Clothing Company as nominee for the partnership of I. G. Wartnik." Attached to this return, which was filed with the Collector on May 31, 1941, was an affidavit executed by petitioner on May 29, 1941, stating that the delinquency in filing the return was due to the fact that all information necessary to complete the return was not available by March 15, 1941, and that through oversight the taxpayer failed to obtain the necessary extension of time for filing. Request was also made in the affidavit that the statement therein be accepted and that no further action be taken against affiant in the matter. A tentative return for the I. G. Wartnik partnership for 1940, showing no estimated income and executed by I. G. Wartnik, was filed with the Collector *46 on March 15, 1941, and an extension was granted to May 31, 1941, for filing a completed return. The completed return, showing among other items of income an amount of $15,744.71 as income from the Howard Clothing Company partnership, was executed by I. G. Wartnik on May 29, 1941, and filed with the Collector on May 31, 1941. The return showed a net income of $53,357.74, of which $22,965.06 was shown as I. G. Wartnik's share and $30,392.68 as the petitioner's share. Attached to the return and in explanation of the foregoing division of income, was a schedule which reads as follows: Partners' Shares of Income
Credit to
Credit to
Total Income
I. G. Wartnik
Harry Wartnik
I. G. Wartnik Partnership
Warehouse, etc.
$ 9,506.15
$ 9,506.15
Deals
28,106.88
14,053.44
$14,053.44
37,613.03
23,559.59
14,053.44
Howard Clothing Company -
Partnership
15,744.71
7,872.36
7,872.35
31,431.95
21,925.79
Additional Consideration
Payable by I. G. Wartnik to Harry Wartnik
for termination of Partnership
8,466.89
8,466.89
TOTALS
53,357.74
22,965.06
30,392.68
Partners' Shares of Income is in accordance with agreement of partners dated May 28, 1941, ratifying *47 termination of I. G. Wartnik partnership as of December 31, 1940. On or about June 26, 1941, closing entries for the year 1940 were made in the books of the I. G. Wartnik partnership. In connection with such entries, an account styled Harry Wartnik Accounts Payable was set up on the partnership books. The journal entries for the account are not in evidence, but from the ledger entries in the account it appears that the account was intended to reflect a portion, at least, of the items and amounts entering into the settlement between I. G. Wartnik and the petitioner. A number of the items involve years as early as 1936 and 1937 and, so far as ascertainable, bear no relation to the income of the I. G. Wartnik partnership for 1940. The evidence shows that one credit entry of $13,992.02 in the account was intended to represent the petitioner's distributive share of the 1940 profits of the I. G. Wartnik partnership, exclusive of Howard Clothing Company, and that another credit entry of $7,869.85 was intended to represent his distributive share of the profits of Howard Clothing Company. On August 6, 1941, I. G. Wartnik executed a partnership return for Howard Clothing Company for the *48 period January 1, 1941 to January 26, 1941, which was filed with the collector on August 7, 1941. This return, which disclosed approximately $500 income, showed the profits distributable one-half to I. G. Wartnik and one-half to D. Podlasky, and that on January 26, 1941, the business was sold to Podlasky. Attached to the return was an affidavit executed by I. G. Wartnik, stating that delinquency in filing the return was due to the fact that all information necessary to complete the return was not available within the time required for filing and that through oversight the taxpayer failed to obtain an extension of time. Request was made that such statement be accepted and that no further action be taken against him. On May 29, 1941, the petitioner and Frances Wartnik executed completed returns for 1940, which were filed with the collector on May 31, 1941. The petitioner's return showed $30,392.68 as income from the I. G. Wartnik partnership, net community income of $27,203.78, of which one-half was to be taxed to Frances Wartnik, and a tax due of $1,116.16. On her return Frances Wartnik reported a net income of $13,601.89, as being one-half "from Husband Harry", and a tax liability *49 of $1,166.16. In determining the deficiencies in controversy, the respondent determined that the petitioner's income tax returns for the years 1937 through 1939 properly reflected his distributive share of income of the I. G. Wartnik partnership on the basis of an oral agreement between the partners effective January 1, 1937; that for such years the petitioner had reported as his share of partnership income 50 per cent of the partnership's income from "Warehouse" and 50 per cent of its income from "Deals"; and that petitioner's distributive share of income from the partnership for 1940 should be computed on the basis of said partnership agreement. Accordingly, the respondent determined the petitioner's share of partnership income for 1940 to be as follows: I. G. Wartnik partnership: Warehouse - 50 per cent of total
of $10,572.17
$ 5,286.08
Deals - 50 per cent of total of
$28,106.88
14,053.44
Howard Clothing Co. partnership
15,744.71
TOTAL
$35,084.23 The respondent further determined that the foregoing total was community income, taxable one-half to petitioner and one-half to Frances Wartnik. Opinion The I. G. Wartnik partnership return disclosed a net *50 income for 1940 of $53,357.74, derived from the following sources: Warehouse $9,506.15, Deals $28,106.88, and Howard Clothing Company partnership $15,744.71. The respondent's determination against petitioner indicates that the respondent made no changes in the foregoing component amounts, except that he increased the income from Warehouse by $1,066.02 to $10,572.17. No error is assigned as to that increase and no contention is made that it was erroneous. The entire controversy revolves about how distribution of the component items should be made. In his petition the petitioner assigned as error the respondent's inclusion in community gross income of $5,286.08, representing one-half of the amount of I. G. Wartnik partnership income from Warehouse as determined by respondent. In support of the assignment the petitioner alleged that under the written partnership agreement he was not entitled to any portion of the income from the warehouse operations; that by reason of an oral agreement between him and I. G. Wartnik, effective during the years 1937 through 1940, the written agreement was modified and he was credited with one-half of the income from Warehouse; that I. G. Wartnik subsequently *51 repudiated the oral agreement and petitioner never received any share of the warehouse income. The assignment of error and allegation of facts were denied by respondent in his answer. The petitioner submitted no evidence respecting an oral agreement whereby he became entitled to a share of warehouse income. While the respondent submitted in evidence the partnership agreement of January 4, 1937, no evidence was submitted with respect to an oral agreement modifying said agreement, nor does respondent or petitioner now contend that there was such an oral agreement. In this situation, and since we find nothing in the agreement of January 4, 1937, to indicate that petitioner was to share in the warehouse income, but, on the other hand, find that it provided that I. G. Wartnik was to become the sole owner of all assets of the partnership delivered to the warehouse and that he was to have the right to fix the price he should pay therefor, we think the respondent erred in including any part of the warehouse income in the community income of the petitioners. In his petition the petitioner assigned as error the respondent's inclusion in community gross income the amount of $15,744.71, representing *52 one-half of the 1940 income of Howard Clothing Company, instead of one-half of the $15,744.71. In support of this assignment of error the petitioner alleged that in 1936 he acquired from I. G. Wartnik the latter's interest in Howard Clothing Company, leaving petitioner and D. Podlasky as the members of that partnership; that later I. G. Wartnik contended that petitioner, as such member of Howard Clothing Company partnership, acted as nominee of I. G. Wartnik partnership; that the distributive shares of the income of Howard Clothing Company thus distributable to petitioner as nominee belonged to and were distributable equally between petitioner and I. G. Wartnik as members of I. G. Wartnik partnership; and that petitioner never received more than one-half of the amount of the portion of Howard Clothing Company income shown as distributable to him as a partner. In his answer the respondent admitted that in 1936 petitioner acquired I. G. Wartnik's interest in Howard Clothing Company, but denied the remainder of petitioner's allegations of fact. At the hearing the petitioner testified to I. G. Wartnik's withdrawal from Howard Clothing Company, the petitioner's acquisition of I. G. Wartnik's *53 interest therein and to the division thereafter of the income between himself and Podlasky. According to the evidence, petitioner's acquisition of I. G. Wartnik's interest occurred several months before they entered into the partnership agreement of January 4, 1937. That agreement contains no reference whatever to Howard Clothing Company. Since according to petitioner's own testimony he, and not the I. G. Wartnik partnership, actually owned the interest in Howard Clothing Company, we fail to see why his full distributive share of the income, $15,744.71, should not be included in gross community income. It may be that in a final settlement of the differences between the petitioner and I. G. Wartnik, the petitioner decided to forego receipt of one-half of said $15,744.71 and allow the same to be distributed to I. G. Wartnik. However, the fact remains that the amount, having arisen from petitioner's ownership of an interest in Howard Clothing Company, was his income in the first instance irrespective of what disposition he might have agreed should finally be made of it. The respondent is sustained as to this item. The petitioner further assigns as error failure of respondent to allow *54 a deduction for 1940 of $28,403.98, as community one-half of loss sustained on the winding up of the I. G. Wartnik partnership, or, in the alternative, the respondent's inclusion in community gross income of any part of the $35,084.23 determined by respondent as the total of petitioner's distributive share of the 1940 income of I. G. Wartnik partnership and Howard Clothing Company. As allegations of fact in support of such assignments, the petitioner states that upon the termination of the I. G. Wartnik partnership and the adjustment and settlement of accounts between him and I. G. Wartnik, he reecived $28,403.98 less than the undistributed balance of his distributive partnership income for the period of the partnership's existence, as reported by him on his federal income tax returns for the years of the partnership's existence, and that he received $33,095.32 less than the amount which such undistributed balance would have been as adjusted in accordance with the respondent's determination, in which respondent included in 1940 community gross income $5,286.08 as petitioner's share of warehouse income and $15,744.71 as his share of Howard Clothing Company income. Petitioner further *55 states that the adjustment and settlement were based upon what I. G. Wartnik contended was the true partnership understanding between him and the petitioner. The respondent denied the assignments of error and the allegations of fact in support thereof. The evidence shows that throughout the years 1937 through 1939 the income of the I. G. Wartnik partnership was divided equally between the petitioner and I. G. Wartnik, as provided for in the partnership agreement of January 4, 1937. The agreement and release of May 28, 1941, recited the termination of the partnership as of December 31, 1940, and provided for an accounting between the petitioner and I. G. Wartnik "strictly in accord and upon the basis of" the partnership agreement of January 4, 1937. Consequently the partnership agreement does not appear to have been modified with respect to the division of the 1940 income of the partnership but was specifically confirmed as being applicable to that year, just as to previous years. Just what the controversy was between petitioner and I. G. Wartnik is not clear from the record. The petitioner testified that it did not relate to the partnership business, but the agreement and release *56 implies that it was in connection with the manner of ascertaining the profits of the ventures and business and the allocation of income to each of the parties. I. G. Wartnik was not offered as a witness nor does the petitioner's testimony or the record otherwise contain any explanation as to why a settlement of the character implied by petitioner's allegations of fact was either demanded by I. G. Wartnik or acquiesced in by petitioner. If, as implied by petitioner's allegations and by his argument on brief, he had overstated his income from the partnerships in his returns for years prior to 1940, the place for correcting such overstatements was in the returns for the years in which reported and not by the allowance of a loss or an exclusion in his 1940 return of the total amount of such overstatements. So far as we can determine from the record, the respondent has correctly determined the amount of the petitioner's distributive shares of the 1940 income of Howard Clothing Company and of the I. G. Wartnik partnership, except as to the warehouse income of the latter, which we have heretofore considered and held that no portion thereof was distributable to the petitioner. Accordingly, *57 the petitioner's assignment of error as to the allowance of a loss of $28,403.98 is denied, and as to the allowance of an exclusion of $35,084.23, is denied to the extent it does not involve warehouse income from the I. G. Wartnik partnership. What has been said above also disposes of, adversely to petitioner, two arguments made by him on brief, namely, (1) that on the basis of actual division, the petitioner's shares of partnership income for 1940 were not in excess of $874.35, since the $9,000 paid to him in 1941 by I. G. Wartnik was only $874.35 in excess of his undistributed shares of partnership income reported in years prior to 1940, and (2) that if it be held that petitioner's shares of partnership income for 1940 exceeded $874.35, then it should be held that he sustained, to the extent of the excess, a loss incurred in trade or business and not compensated for by insurance or otherwise. Since the agreement and release of May 28, 1941, indicates that the settlement composed the differences between petitioner and I. G. Wartnik as to the operations of the partnership for all years throughout the period January 4, 1937, through December 31, 1940, it is apparent that the parties *58 in 1941 were only making a lumpsum settlement of claims respecting partnership income for the four-year period and not merely a settlement as to the distribution of only 1940 income. The petitioner's arguments on brief appear to overlook that fact. To acquiesce in petitioner's arguments would result in understating petitioner's 1940 income by the total amount by which his income had been overstated in prior years and in effect hold that an error or errors made in a return for a prior year or years can be corrected in a return for a subsequent year. That can not be done. Issue II. - Traveling, Entertainment and Automobile Expenses Findings of Fact During 1940, the petitioner traveled on business for the I. G. Wartnik partnership, using his automobile for such purpose. He also made expenditures for entertainment and advertising in connection with the partnership business. He was not reimbursed by the partnership for any of his expenditures for the foregoing purposes. The petitioner kept no record with respect to such expenditures, or as to the places to which he traveled, the portion of the time his car was used for business purposes, the mileage of the car for the year or the *59 nature of the advertising or the entertainment. In reporting community net income for 1940, the petitioner deducted $2,976.25 with respect to the foregoing expenditures. The amount deducted was based upon an estimate of 100 days of travel, with an average of $5 a day for hotel, $5.50 a day for meals, $25 a week for 52 weeks for advertising and entertainment and an estimate of $835 for automobile expenses, of which 75 per cent, or $626.25, was estimated as applicable to business purposes. The respondent denied the entire amount of the deduction taken. In computing community net income for 1940, a deduction of $800 is allowable as an ordinary and necessary business expense with respect to petitioner's expenditures for the abovementioned purposes. During 1941, the petitioner operated as a sole proprietor and was engaged in the same type of business as in 1940. In connection with his business he incurred expenses of the same character as incurred in 1940. The petitioner kept no record of such expenditures but was fairly certain as to the places he went and the number of days spent at each. In reporting community income for 1941, a deduction of $3,209.75 was taken for such expenditures. *60 The amount deducted was based upon an estimate of $410 for plane and train fare, $687.50 for hotels and meals for 55 days at $12.50 a day, $1,300 for entertainment expenses for 52 weeks at $25 per week and automobile expenses of $1,083, of which 75 per cent, or $812.25, was estimated as applicable to business purposes. The respondent denied the entire amount of the deduction taken. In computing 1941 community income, a deduction of $1,000 is allowable as an ordinary and necessary business expense with respect to expenditures made by petitioner for the abovementioned purposes. Opinion Concededly the petitioner kept no record of the expenditures involved in this issue. His testimony as to the amounts actually expended is not very enlightening. We are satisfied that petitioner made some expenditures for these purposes but are unable from the evidence submitted to find that they were made in the amounts claimed. Since the petitioner's failure to establish the amounts actually expended results from a situation of his own making, and being of the opinion that some amounts are allowable, we have determined, as best we can from the evidence before us, and found as facts, the amount deductible *61 in computing community net income for each of the years. Issue III. - Depreciation on Automobiles In reporting community net income for 1941, the petitioner deducted $630.19 as depreciation sustained on two automobiles. The respondent disallowed $274.56 of the deduction. On petition, error was assigned as to $24.30 of the disallowance but this was denied by respondent. Since no evidence was submitted as to the issue and no mention is made thereof on brief, we assume the issue has been abandoned, and accordingly sustain the respondent's disallowance. Decisions will be entered under Rule 50.